**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 27, 2020**

# In the Court of Appeals of Georgia

A19A2318. COWART v. GEORGIA POWER COMPANY.

HODGES, Judge.

This appeal presents the latest chapter in an over 15-years-long dispute between Christopher H. Cowart d/b/a Cowart Tree Experts and Georgia Power Company. Georgia Power successfully petitioned for contempt against Cowart as a result of the manner in which he operated his business on a Georgia Power easement containing a highly charged electric transmission line. Although Cowart does not dispute the finding of contempt, he appeals the trial court's order, contending (1) the trial court impermissibly modified prior orders through a contempt proceeding; and (2) the trial court erred by imposing impermissible criminal contempt sanctions that did not comply with statutory limitations. This Court, however, cannot address the merits of these enumerations because we cannot determine from the state of the

record whether we have subject matter jurisdiction. To that end, the trial court needs to first determine whether Georgia Power properly filed a motion for contempt or impermissibly attempted to initiate a new civil action. Accordingly, we vacate the trial court's order and remand with direction.

To reach our determination on jurisdiction, we must first review the long and fraught history of the dispute between Georgia Power and Cowart that culminated in the order on appeal. Georgia Power operates electric transmission lines on its 100-foot-wide easement which runs through Cowart's subsequently obtained property. The simultaneous operation of these transmission lines and Cowart's business has brought the parties to court multiple times.

In 2002, Georgia Power sued Cowart seeking a restraining order and injunction to prevent Cowart from encroaching and obstructing its easement (the "2002 Action"). This lawsuit resulted in an order in 2002 (the "2002 Order") which provided, in part

> [Cowart] shall remove from the area of the 100 foot right-of-way easement area belonging to [Georgia Power] all equipment, structures, obstruction, debris, logs, trees, stacks of material, and other items which have been placed by [Cowart] on the right-of-way-easement of [Georgia Power.] Except as specifically agreed to by [Georgia Power] in writing, this Court, hereby enjoins [Cowart] from placing any brush, operating

2

any machinery, recycled materials, inventory, bags, piles of material, equipment, trees, logs, inventory of any kind or other obstruction on the 100 foot wide easement area[. Cowart] is further enjoined from blocking or obstructing the 100-foot wide easement area of [Georgia Pacific]

The record before us on appeal does not include all of the documents and proceedings from the 2002 Action. After the entry of the 2002 Order, the parties required further court intervention. In 2003, Georgia Power petitioned for contempt, alleging that Cowart continued to dangerously operate equipment in the right of way, continued to place obstructions in the right of way, and undermined the tower that supports the transmission line by grading the right of way area underneath the line. The trial court conducted an evidentiary hearing, the transcript of which is not included in the record on appeal, at which the trial court found that Georgia Power presented evidence that supported its allegations, including pictures depicting heavy equipment operating dangerously close to the transmission line, compromise of the transmission tower due to excavation, large logs swinging dangerously close to the transmission line, and debris and other items obstructing the easement. The trial court also heard testimony about a contractor of Cowart making contact with Georgia Power's conductors as well as testimony that Cowart's operational practices created a risk of severe injury or death. Accordingly, the trial court found that "a substantial

3

threat to the health and safety of employees, visitors, and others exist[s] as a result of the operations of [Cowart] on the right of way easement of [Georgia Power.]"

As a result of Georgia Power's contempt petition, the trial court entered another order in 2005 (the "2005 Order"). The trial court ordered the parties to enter an Encroachment Agreement that the parties had negotiated, and it incorporated such agreement into its order.[1] The 2005 Order more specifically identified the restrictions and prohibitions on Cowart's conduct in Georgia Power's easement.

Following entry of the 2005 Order, Georgia Power again petitioned for contempt against Cowart. This petition resulted in the trial court's entry of a 2006 order in the 2002 Action (the "2006 Final Consent Order") which, among other things, appointed a special master to observe Cowart's compliance with the court's prior order and to report violations to the trial court. It is unclear whether the entirety of the proceedings in 2005 and 2006 are before us in the record on appeal.

In 2012, Georgia Power filed a document titled "PETITION FOR CONTEMPT AND IMPOSITION OF SANCTIONS" which sought a finding of contempt of the 2005 Order entered in the 2002 Action. This petition was assigned a new civil action

---

[1] The record does not contain an executed or file-stamped version of this agreement, but the parties do not dispute its existence.

number different from the 2002 Action. Along with this petition, Georgia Power served a summons which identified the document it was filing as a "complaint" which would subject Cowart to default if not answered within 30 days. It also submitted a case information sheet which, rather than selecting the box "Non-Domestic Contempt", selected the box for "Equity[.]"

The relief requested by Georgia Power in its 2012 petition included Cowart's incarceration, fines in an amount not less than $10,000 per violation, an award of attorney fees and expenses, an order to permanently remove obstructions from the easement, for the trial court to "[f]ormulate a design for improvements to the right of way so that Defendant Cowart is not able to violate the Court's order and is physically restrained from contempt including the construction of gates and fencing at [Cowart's] expense[,]" as well as a request that the trial court terminate the previously entered Encroachment Agreement.

After this filing by Georgia Power, the special master issued reports in the 2012 Action finding violations of the 2005 Order, specifically materials being impermissibly stored in the easement. Georgia Power subsequently moved for an emergency hearing on its contempt petition in the 2012 Action as a result of an event on August 15, 2012. On that day, a third-party contractor of Cowart entered Georgia

5

Power's easement with a truck and raised a mounted boom into the energized field surrounding the transmission line. Electricity arced from the line to the boom, causing the front two tires of the truck to blow out. Fortunately, the driver of the vehicle was unharmed. This event caused a regional power outage which resulted in traffic problems, interrupted the dispatch of emergency services, as well as regional security systems failures. As a result of an emergency hearing, and upon the agreement of the parties, the trial court entered an order which, among other things, required Cowart to hire an electrical transmission expert to monitor his compliance with the 2005 Order. In 2015, Georgia Power filed another emergency motion for contempt in the 2012 Action, alleging that Cowart's workers were again observed raising a basket lift and operating other heavy equipment under the transmission line.

Ultimately, in 2018, the trial court entered an order in the 2012 Action finding Cowart in contempt of the 2005 Order (the "2018 Order"). In the 2018 Order the trial court reaffirmed the prior findings of fact, conclusions of law, and injunctions contained in its prior orders entered in the 2002 Action. The trial court found that Cowart "repeatedly and intentionally violated the Orders of this Court and continues based on the latest evidence to violate the injunctions of this Court designed to protect the property of [Georgia Power] and the lives of all that come onto the

easement of Georgia Power." After recounting the numerous violations it found, the trial court stated "[e]ach of these violations creates conditions that are extremely dangerous and likely to cause irreparable injuries if they are allowed to continue." The trial court concluded that "[t]he failure of Mr. Cowart to honor the instructions of the Court, makes it necessary for a structure to be built to restrain his activities so that his business operation is physically restrained from trespassing on the property rights of [Georgia Power]."

As a result of its finding of contempt, the trial court specifically ordered as follows:

> [Cowart] is ordered to install all safety measures shown on the remedial drawing and site plan attached hereto as Exhibit "A" within forty-five (45) days of the filing of this Order. [Cowart] shall be allowed to continue currently-allowed operation for forty-five (45) days during the installation of said safety measures. In the event that said measures are not completely installed within the forty-five (45) day period outlined above, [Cowart] is ordered to cease all activities on [Georgia Power's] transmission line easement until installation of the safety measures is completed. This Court incorporates the legal conclusions expressed in the [2005 Order] as the governing law justifying this remedy.

> Should [Cowart] not meet the forty-five (45) day deadline imposed above, subsequent to his installation of such safety measures, [Cowart]

shall be allowed to resume activity within the easement area that is in compliance with the prior orders and any written Encroachment Agreements between the parties.

(Footnote omitted.)[2] Cowart timely appeals from the 2018 Order, arguing that (1) the trial court impermissibly modified prior orders through a contempt proceeding; and (2) the trial court erred by imposing impermissible criminal contempt sanctions that did not comply with statutory limitations.

"We do not reach [Cowart's] arguments, however, because . . . the trial court's order that [Cowart] is challenging must be [vacated] for other reasons." *Reece v. Smith*, 292 Ga. App. 875, 878 (3) (665 SE2d 918) (2008). Our inability to address the merits of Cowart's appeal stem from this Court's "duty to inquire into its jurisdiction to entertain each appeal." *Hammonds v. Parks*, 319 Ga. App. 792, 793 (2) (735 SE2d 801) (2012). "Parties may not give jurisdiction to a court by consent, express or implied, as to the person or subject matter of an action." OCGA § 15-1-2. Accordingly, although the parties do not raise the issue on appeal,"subject matter

---

[2] The trial court also awarded Georgia Power a money judgment of $187,998.99.

8

jurisdiction has a unique attribute. It can *never* be waived." (Citation and punctuation omitted.) *Bolden v. Barton*, 278 Ga. 831, 832 (1) (607 SE2d 889) (2005). Indeed,

> [w]hen a court has before it a matter where it has no jurisdiction of the subject matter, no legal judgment can be rendered except one of dismissal; and when this court discovers from the record on appeal that a judgment has been rendered by a court having no jurisdiction of the subject matter, it will of its own motion reverse the judgment.

(Citations and punctuation omitted.) *In the Interest of A. D. B.*, 232 Ga. App. 697, 697-698 (503 SE2d 596) (1998).

Here, it does not appear from the record that the trial court considered whether the 2012 Action was properly filed. To the extent Georgia Power attempted to initiate a new civil action by its contempt petition, such was improper because

> [i]t is axiomatic that an action for contempt is ancillary to the primary action and, as such, is not a pleading but a motion. A motion for contempt is not tantamount to the filing of a complaint. An application for contempt does not come within the definition of a pleading.

(Citations and punctuation omitted.) *Phillips v. Brown*, 263 Ga. 50, 51 (2) (426 SE2d 866) (1993); see also *Opatut v. Guest Pond Club*, 254 Ga. 258 (1) (327 SE2d 487) (1985) ("an application for contempt may not, standing alone, serve to commence a civil action for damages as it is not a complaint") (citations and punctuation omitted);

9

OCGA § 9-11-7 (defining pleadings). If the trial court, with the benefit of the entirety of the filings during this lengthy dispute, including the documents filed along with the petition in 2012, determines that Georgia Power's filing was an attempt to improperly commence a new civil action, then it must find that it lacks subject matter jurisdiction to hear the matter and its finding of contempt cannot stand. *McNeal v. McNeal*, 233 Ga. 836 (213 SE2d 845) (1975). If, however, the trial court determines that Georgia Power properly filed a motion which was merely assigned a 2012 case number by the clerk of court, then subject matter jurisdiction exists and this Court may subsequently consider the merits of the appeal. See *Brown v. King*, 266 Ga. 890, 891 (2) (472 SE2d 65) (1996) ("[b]y our decision today, we do not intend to change the authority of clerks to assign separate case numbers or assess fees in contempt actions filed after a final decree.").

*Judgment vacated and case remanded with direction. Dillard, P. J., and Gobeil, J., concur*.